IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROOSEVELT LEON CATHEY,<br><br>　　　　　　　Petitioner,<br><br>　　vs.<br><br>D. K. SISTO, Warden, California State Prison, Solano,<br><br>　　　　　　　Respondent. | No. 2:08-cv-01912-JKS<br><br>MEMORANDUM DECISION |

　　　　Roosevelt Cathey, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under 28 U.S.C. § 2254.  Cathey is currently in the custody of the California Department of Corrections and Correctional Services, incarcerated at the California State Prison, Solano.  Respondent has answered, and Cathey has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

　　　　In February 2007 Cathey was convicted following a jury trial along with a co-defendant, George Coles, in the Sacramento County Superior Court of Burglary in the First Degree, Cal. Penal Code § 459, with two prior serious felony convictions, Cal. Penal Code §§ 667, 1170.12.  The trial court sentenced Cathey to an aggregate prison term of thirty-five years to life.  On appeal, the California Court of Appeal, Third Appellate District, affirmed Cathey's conviction and sentence in an unpublished decision,[1] and the California Supreme Court denied review on June 25, 2008.  Cathey timely filed his Petition for relief in this Court on August 5, 2008.

---

[1] *People v. Coles*, No. C055309, 2008 WL 1777810 (Cal. Ct. App. Apr. 21, 2008).

While Cathey's Petition before this Court was pending, Cathey sought and obtained a stay of this proceeding pending the exhaustion of his remedies in the state courts.[2]  Cathey then filed a habeas petition in the California Supreme Court on December 28, 2008, which was summarily denied without opinion or citation to authority on June 23, 2010.  Cathey filed his undated Amended Petition for relief on August 18, 2010.

The facts of the crime, as summarized by the California Court of Appeal, are:

> At about 9:00 a.m. on August 21, 2006, Michael Nicolaou heard his doorbell ring and his neighbor's dogs barking.  He walked out of his house and saw Coles and Cathey, who are African-American, standing in his neighbor's driveway.  Nicolaou asked, "Can I help you?"  Cathey said they were looking for "Tiffany" to give them a ride to work, they had called Tiffany from a phone booth, and they were going to return to the phone booth and try again.  Suspicious because he knew there were no phone booths in the area, Nicolaou called the sheriff's department and provided descriptions of Coles and Cathey and the clothing they were wearing.

> About 10:00 a.m. that morning, Nathan Schemel drove away from his residence and saw Coles and Cathey walking on the sidewalk in the direction of his home.  At 10:45 a.m., in response to a call from the sheriff's department, he returned to his home where he saw Coles and Cathey being detained.  Schemel's home had been broken into and ransacked.

> Deputies Claudio Sotelo and Peter Cress had responded to Nicolaou's report.  Upon arriving at the location, they saw Cathey walking down the driveway of Schemel's residence.  Because Cathey matched a description provided by Nicolaou, the deputies asked Cathey why he was there.  Cathey said that he was alone in the neighborhood trying to find a woman who had offered him a lawn mowing job and that he was going house to house to locate her because she had not given him an address.

> Sotelo checked Schemel's house, found the door was unlocked, detained Cathey, and called for additional deputies.  A person then drove up and told the deputies that he had seen a Black man running on a street directly north of Schemel's house.  Sotelo directed Deputy Larry Canfield, a motorcycle officer, to try and locate the individual.

> As Canfield drove through the neighborhood, he saw Coles running across a street.  Using his PA system, Canfield ordered Coles to get on the ground.  Coles

---

[2] It also appears that Cathey filed a *pro se* habeas petition in the Sacramento County Court on March 23, 2007.  Petition, Exhibit C, Docket No. 26 at 62-67.  There is no indication in the record of the result of that petition, nor does either party refer to the result.

lay face down on the grass of a residence but kept reaching into his right front pocket pants pocket with his hand.  Although Canfield told Coles to remove his hand from his pocket, he would not comply.

Canfield tried to get physical control of Coles; a struggle ensued and Coles tried to grab Canfield's weapon.  During the struggle, Canfield saw a butterfly knife fall from Coles's pants pocket.  With the help of a bystander, Canfield subdued Coles and put him in a patrol car.  A search of the area where the struggle occurred revealed a loaded .32 caliber semiautomatic firearm.  The firearm had been stolen six days earlier during a residential burglary.[3]

## II.  GROUNDS RAISED/DEFENSES

In his Amended Petition, Cathey raises seven grounds:  (1(a)) actual innocence; (1(b)) ineffective assistance of trial counsel; (1(c)) ineffective assistance of appellate counsel; (2(a)) the sentence imposed violated the Eighth Amendment's proscription on cruel and unusual punishment; (2(b)) the trial court erred in not holding a proper *Romero* hearing;[4] (3(a)) his Sixth Amendment right to confrontation was violated when the trial court allowed a police officer to testify as to what he was told by an unidentified "phantom" witness; and (3(b)) his Sixth Amendment rights were violated when a police officer was permitted to testify to Cathey's out-of-court statement.  Respondent asserts no affirmative defense.[5]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[3] *Coles*, 2008 WL 1777810 at *1-2.

[4] *People v. Superior Court* (*Romero*), 917 P.2d 628, 629-30 (Cal. 1996).  A short-hand reference to the power of the trial court to dismiss a prior "strike," either on its own motion or that of the prosecutor under California Penal Code § 1385(a).

[5] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[10]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[11]  "[A]bsent a specific constitutional

---

[6] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412 (alteration added).

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[12]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[13]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[14]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[15]

---

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[15] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[16]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[17]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[18]

A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."[19]  When there is no reasoned state-court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[20] "The presumption may be overcome when there is reason to think  some other explanation for the state court's decision is more likely."[21]  Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state-court decision was

---

[16] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[17] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[18] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[19] *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).

[20] *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

[21] *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

"objectively unreasonable."[22]  In conducting an independent review of the record, this Court

presumes that the relevant state-court decision rested on federal grounds,[23] giving that presumed

decision the same deference as a reasoned decision.[24]  The scope of this review is for clear error

of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground by
> *Williams*. . . . Federal habeas review is not *de novo* when the state court does not
> supply reasoning for its decision, but an independent review of the record is required
> to determine whether the state court clearly erred in its application of controlling
> federal law.  Only by that examination may we determine whether the state court's
> decision was objectively reasonable.[25]

"[A]lthough we independently review the record, we still defer to the state court's ultimate

decision."[26]

---

[22] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)).

[23] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

[24] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[25] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (citation omitted). *But cf. Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("Our standard of review is not controlled by *Delgado v. Lewis* . . . . There, we held that where a state court provides no rational for a decision, a habeas court does not apply de novo review, but instead determines whether the state decision was objectively unreasonable based on its independent reading of the record.  Here, however, the state court was not silent as to its reasoning. . . .  Therefore, we review de novo whether Lewis waived his right to conflict free counsel . . . .").

[26] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## IV.  DISCUSSION

Ground 1(a):  Actual Innocence

In this ground, Cathey contends that he is "actually innocent" of the charge of which he was convicted—first-degree burglary.  Cathey raised this claim in his habeas petition to the California Supreme Court.

While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review,[27] a situation not present in this case, the Supreme Court has never held that a freestanding claim of innocence is cognizable in a § 2254 petition filed by a non-capital defendant.[28]  *House* declined to answer the question left open in *Herrera*, noting that because "[p]etitioner has failed to make a persuasive showing of actual innocence . . . . [T]he Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence."[29]  The Ninth Circuit, however, has assumed as much without deciding the question and has held that "a habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent."[30]  Following the lead of the circuit, assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, it is necessary to apply the appropriate standard to the evidence.

---

[27] *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995); *Herrera v. Collins*, 506 U.S. 390, 400 (1993).

[28] *See House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 129 S. Ct. 2308, 2321 (2009).

[29] *Herrera*, 506 U.S. at 427 (O'Connor, J., concurring).

[30] *Carringer v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc) (adopting the view of Justice Blackmun in his dissent in *Herrara*, 506 U.S. at 442-44 (Blackmun, J., dissenting)).

8

In the context of overcoming a procedural default, a federal habeas petitioner must demonstrate that the constitutional violations he alleges "ha[ve] probably resulted in the conviction of one who is actually innocent," such that a federal court's refusal to hear the defaulted claims would be a "miscarriage of justice."[31]  It is important to note that, in this context, "'actual innocence' means factual innocence, not mere legal insufficiency."[32]  To make the requisite showing of actual innocence, the petitioner must produce "new *reliable* evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."[33]  New evidence is relevant evidence that was either excluded or unavailable at trial.[34]  In making its analysis, a federal habeas court considers the entire record, old evidence as well as new, and "on this total record, the court must make a probabilistic determination of what reasonable, properly instructed jurors would do."[35]  In so doing, the court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence."[36]

---

[31] *Schlup,* 513 U.S. at 326-27 (internal quotation marks and citations omitted).

[32] *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

[33] *Schlup*, 513 U.S. at 324, 327 (emphasis added).

[34] *Id.* at 328; *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) (citing *Schlup*, 513 U.S. at 327-28).

[35] *House v. Bell*, 547 U.S. 518, 537-38 (2006) (citing *Schlup*, 513 U.S. at 329) (internal quotation marks omitted); *Bousley*, 523 U.S. at 630-31 (Scalia, J., dissenting).

[36] *House,* 547 U.S. at 558 (citing *Schlup*, 513 U.S. at 332).

In the context of the hypothetical freestanding actual innocence claim, the Supreme Court has described the threshold as "extraordinarily high."[37]  "The sequence of the Court's decisions in *Herrera* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*."[38]  Measured against this standard, Cathey has fallen far short of establishing his actual innocence.

Cathey has produced no new evidence.[39]  Reduced to its essence, Cathey's argument is that the evidence does not establish that he entered the building or, if he entered the building, he did so without the intent to commit a felony.  Cathey's argument is that the evidence is insufficient to establish the elements of the crime of burglary, not an actual innocence argument.  Accordingly, this Court addresses it as such.[40]  The California Supreme Court did not give any reasons for denying this claim.  When there is no reasoned state-court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the

---

[37] *Herrera v. Collins*, 506 U.S. 390, 417 (1993).

[38] *House*, 547 U.S. at 555.  One Ninth Circuit judge has observed that prevailing on freestanding actual innocence claims "imposes a much more difficult—indeed possibly insurmountable—burden on the petitioner."  *Smith v. Baldwin*, 510 F.3d 1127, 1156 n.8 (9th Cir. 2007) (en banc) (Reinhardt, J., dissenting).

[39] Although Cathey refers to newly produced or discovered evidence throughout his Amended Petition, at no place does Cathey identify "new reliable evidence," let alone that it establishes his factual innocence.  All the evidence that Cathey claims was newly discovered, i.e., differences in testimony of the police officers as to the time Cathey was apprehended and the crime occurred, is of record.

[40] Prisoner *pro se* pleadings are given the benefit of liberal construction.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

merits in the absence of any indication or state-law procedural principles to the contrary."[41]  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."[42]  Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state-court decision was "objectively unreasonable."[43]  In conducting an independent review of the record, this Court presumes that the relevant state-court decision rested on federal grounds,[44] giving that presumed decision the same deference as a reasoned decision.[45]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[46]  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made

---

[41] *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

[42] *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

[43] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)).

[44] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

[45] *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[46] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

the inferences, or considered the evidence at trial.[47]  Rather, when "faced with a record of

historical facts that supports conflicting inferences," this Court "must presume—even if it does

not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor

of the prosecution, and defer to that resolution."[48]

It is a fundamental precept of dual federalism that the States possess primary authority for

defining and enforcing the criminal law.[49]  Consequently, although the sufficiency of the

evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its

inquiry by reference to the elements of the crime as set forth in state law.[50]  This Court must also

be ever mindful of the deference owed to the trier of fact and the sharply limited nature of

constitutional sufficiency review.[51]

Cathey misperceives the role of a federal court in a habeas proceeding challenging the

sufficiency of the evidence in a state-court conviction.  This Court is precluded from either re-

weighing the evidence or assessing the credibility of witnesses.  Where the question is one of

credibility, the finding of the finder-of-fact carries the day.[52]  Under *Jackson*, the role of this

Court is to simply determine whether there is any evidence, if accepted as credible by the jury,

sufficient to sustain conviction.[53]  Cathey is correct in his contention that there is no *direct*

---

[47] *Jackson*, 443 U.S. at 318-19.

[48] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[49] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[50] *Jackson*, 443 U.S. at 324 n.16.

[51] *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

[52] *See Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

[53] *Schlup v. Delo,* 513 U.S. 298, 340 (1995).

evidence that he entered the residence or that, if he did enter the residence, he did so with the intent to commit a felony.  Evidence sufficient to convict need not be direct.  Although it may not be based upon mere speculation, a conviction may be based upon circumstantial evidence or proven facts from which it may reasonably be inferred that a crime was committed and that the defendant committed that crime.[54]

A witness observed Cathey and Coles acting suspiciously in the neighborhood where the burglary occurred and where neither of the defendants lived.[55]  A sheriff's deputy spotted Cathey emerging from the porch area of the house that had just been burglarized.  Cathey matched the description of one of the suspicious individuals who had been reported to the police.[56]  Cathey gave contradictory statements to a neighbor and to a sheriff's deputy as to why he was in the neighborhood.[57]  Upon being detained and searched, a deputy found a pair of dark mesh gloves in Cathey's pants pocket,[58] and Coles, who had earlier been spotted going house to house in the neighborhood with Cathey, also had a pair of black gloves in his pocket at the time of his arrest.[59]  Coles was carrying $2.86 in cash, which was consistent with the amount of money taken during the burglary.[60]

---

[54] *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).

[55] Lodged Doc. 2 at 39-42.

[56] Lodged Doc. 2 at 114-116, 118, 131.

[57] Lodged Doc. 2 at. 40, 63, 219.

[58] Lodged Doc. 2 at 220.

[59] Lodged Doc. 2 at 172.

[60] Lodged Doc. 2 at 103-104, 180.

In this case, there was sufficient credible circumstantial evidence and other proven facts from which the jury could reasonably infer that each element of the crime of first-degree burglary, as defined by California law, existed.  Although it might be possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.[61]  Cathey bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous.[62]  Cathey has failed to carry that burden.  The record does not compel the conclusion that no rational trier of fact could have found proof of each of the elements of the crime of first-degree burglary, especially considering the double deference owed under *Jackson* and AEDPA.  Cathey is not entitled to relief under Ground 1(a).

Ground 1(b):  Ineffective Assistance of Trial Counsel

Cathey contends that he received ineffective assistance of counsel, listing ten alleged errors.  Of those ten, only those related to counsel's performance during sentencing are fully developed.  The remaining alleged errors are vague or conclusory and without factual support.[63]  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[64]  The court must then consider those acts or omissions against "prevailing

---

[61] *Jackson v. Virginia*, 443 U.S. 307, 326 (1979).

[62] 28 U.S.C. § 2254(e)(1).

[63] The Amended Petition is replete with homilies and snippets from cases that could, if factually supported, support a determination that Cathey was denied the effective assistance of counsel.  Cathey, however, fails to adequately develop his arguments with facts that establish that the homilies and snippets he cites have been violated in this case.

[64] *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

professional norms."[65]  In this case, other than counsel's alleged silence during the sentencing

phase, Cathey does not identify any act or omission of his trial counsel that was deficient.  Thus,

because claims lacking specific factual support are insufficient to state a claim warranting federal

habeas relief,[66] this Court declines to address those claims on the merits, and summarily rejects

them.

The Court of Appeal succinctly summarized and rejected Cathey's argument that his

counsel was ineffective during the sentencing phase.

> After denying Coles's and Cathey's motions to strike their respective prior
> serious felony convictions, the court noted that sentences of 25 years to life was
> "harsh" because "basically, there [was] no . . . physical violence" committed during
> the current offenses (overlooking Coles's struggle with Deputy Canfield and attempt
> to grab the deputy's weapon).  The court then asked if the parties would "want to talk
> about that" to see if they could agree on a less severe sentence.  When Coles's
> counsel questioned whether the prosecutor had any authority to enter into such an
> agreement, the court replied: "Right. I would doubt that, too" "[i]n that the legislature
> has imposed this as a three strike case . . . ."  Cathey's counsel said nothing during
> this exchange, and the court then proceeded to sentence the defendants in accordance
> with the Three Strikes law.
>
> Cathey argues his counsel's silence and failure to act in response to what he
> describes as the trial court's "offer to impose an agreed upon lesser sentence"
> constituted ineffective assistance of counsel.  The contention fails.
>
> To establish ineffective assistance of counsel, a defendant must show
> counsel's act or omission was unreasonable and, but for the act or omission, the
> defendant would have obtained a more favorable result.  (*People v. Ledesma* (1987)
> 43 Cal.3d 171, 216-218.)
>
> "'[A] court need not determine whether counsel's performance was deficient
> before examining the prejudice suffered by the defendant as a result of the alleged
> deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground
> of lack of sufficient prejudice . . . that course should be followed.'" (*In re Alvernaz*
> (1992) 2 Cal.4th 924, 945.)

---

[65] *Id*.

[66] *Cox v. Del Papa*, 542 F.3d 669, 681 (9th Cir. 2008); *Mayle v. Felix*, 545 U.S. 644, 655-
56 (2005); Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2011)

Cathey argues: "In this case, [the People] can not [*sic*] prove a lack of prejudice. Indeed, [the People] never even attempt[ ] to do so, merely stating that [defendant] has not proven prejudice. However, this places the burden on the wrong party." But it is Cathey's appellate attorney who is wrong. The burden of establishing prejudice is on defendant. (*People v. Ledesma, supra,* 43 Cal.3d at pp. 217-218.) "Anyone who seeks on appeal to predicate a reversal of conviction on error must show that it was prejudicial. [Citation.]" (*People v. Archerd* (1970) 3 Cal.3d 615, 643.)

Cathey also wrongly faults the People for asserting that once the trial court denied Cathey's motion to strike one of his prior serious felony convictions, the court was required to impose the sentence it did.

"'[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' [Citation.] To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme."' [Citation.]" *People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Having found that Cathey did not fall outside the Three Strikes scheme, the trial court had no choice but impose the sentences required by the Three Strikes law. That Cathey's trial attorney did not argue otherwise was not ineffective assistance of counsel. (*People v. Constancio* (1974) 42 Cal.App.3d 533, 546 ["It is not incumbent upon trial counsel to advance meritless arguments or to undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel"].)[67]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Cathey must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[68] A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment."[69] Cathey must

---

[67] *People v. Coles*, No. C055309, 2008 WL 1777810, at *5-6 (Cal. Ct. App. Apr. 21, 2008).

[68] *Strickland*, 466 U.S. at 687.

[69] *Id*.

show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[70]  An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[71]  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[72]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[73]

---

[70] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985) (citing *Strickland,* 466 U.S. at 694).

[71] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." (citing *Strickland*, 466 U.S. at 687)); *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." (citations omitted)).

[72] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

[73] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

17

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[74]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard.  Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[75]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[76]

This Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[77]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Cathey's case within the scope of *Andrade-Williams-Landrigan-Richter*, i.e., the state court decision was not more than incorrect

---

[74] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[75] *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[76] *Id.* at 786.

[77] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

or erroneous, its application of clearly established federal law was not objectively unreasonable.

Cathey has failed to establish that his trial counsel committed any error that was so serious that

counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his

defense was prejudiced, as required by *Strickland-Hill*.  Cathey is not entitled to relief under

Ground 1(b).

Ground 1(c):  Ineffective Assistance of Appellate Counsel

Cathey contends that, because his appellate counsel failed to use the "new evidence"

Cathey brought to his counsel's attention, i.e., the differences in testimony of the police officers

as to the actual time Cathey was detained, he was denied effective assistance of counsel.  Cathey

raised this claim in his habeas petition to the California Supreme Court.

In support of this claim, Cathey refers to the correspondence he received from his

appellate counsel.  In correspondence dated August 12, 2007, counsel wrote:  "Likewise, you

said you were arrested at 9:29 and the crime happened at 10:04.  Had the crime been reported

already.  If so, this had to be a mistake by the person who wrote down the times."[78]  In

correspondence dated September 6, 2007, counsel wrote:  "You say you were arrested at 9:29 and

the crime happened after 10.  Now that is when they discovered it, but that doesn't mean it didn't

happen before."[79]

 First, as noted above, because this evidence is of record, it is not "new" evidence.

Second, and more importantly, as appellate counsel points out in responding to Cathey, Cathey's

entire argument is based upon an obvious misinterpretation of the evidence.  The failure of

---

[78] Docket No. 26 at 50-51.

[79] Docket No. 26 at 56.

appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[80]   Cathey is not entitled to relief under Ground 1(c).

Ground 2(a):  Cruel and Unusual Punishment (Eighth Amendment)

The trial court sentenced Cathey to a term of twenty-five years to life on the first-degree burglary conviction.  The trial court then added five years for each of two prior convictions under California's "three-strikes" law, for an aggregate sentence of thirty-five years to life.  Although it is not entirely clear, Cathey appears to be arguing that this violates the Eighth Amendment's proscription on cruel and unusual punishment because he is:  (1) being punished twice for his prior convictions; and (2) his criminal history does not warrant application of the "three strikes" enhancement.  The Court of Appeal rejected Cathey's Eighth Amendment arguments, holding:

> The Eighth Amendment proscription against cruel and unusual punishment contains a narrow disproportionality principle which prohibits imposition of a sentence grossly disproportional to the severity of the crime.  (*People v. Meeks* (2004) 123 Cal.App.4th 695, 707.)  A proportionality analysis requires comparison of (1) the gravity of the offense committed and the harshness of the penalty, (2) the sentences imposed on others for the same crime in the same jurisdiction, and (3) the sentences imposed for the same crime in other jurisdictions.  (*Ibid.*)  Analyzing the gravity of the crime includes consideration of both the offense and the defendant's criminal history.  (*Id.* at p. 708.)
>
> "[I]t is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and third criteria come into play."  (*People v. Meeks, supra,* 123 Cal.App.4th at p. 707.)  Coles and Cathey have not shown that their circumstances constitute a "rare case."
>
> *   *   *   *
>
> Cathey's crime was residential burglary, a dangerous felony (*People v. Estrada, supra,* 57 Cal.App.4th at p. 1281), committed with an accomplice who was armed with a loaded firearm and a knife.  Cathey's prior criminal record is

---

[80] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective assistance of counsel).

significant.  In December 1996, he was arrested after he and a companion broke into four vehicles; when he was arrested, Cathy was in possession of burglary tools, numerous items of stolen property, and rock cocaine.  Convicted of possessing an illegal substance and two counts of misdemeanor burglary, he was placed on three years' probation.  In May 1998, he was arrested after he and a companion broke into a vehicle and took the stereo.  He was convicted of felony second degree burglary and was placed on five years' probation.  In September 1998, he was convicted of felony second degree burglary and sentenced to state prison after breaking into two vehicles. In December 2001, Cathey forcibly entered a residence but fled when the alarm was activated; he was convicted of first degree burglary and sentenced to prison for four years.  In or about November 2004, Cathey attempted to enter a residence through a window, but fled when he saw someone inside; he was convicted of attempted first degree burglary and was sentenced to prison for two years.  He was paroled in June 2006 and committed the home burglary in this case two months later.

Cathey's disproportionality argument is essentially that he never engaged in violence and tried to avoid violence by burglarizing only unoccupied residences or vehicles.  Yet his record demonstrates Cathey is a career thief whose willingness to break into people's homes poses a risk of violence.  Gross disproportionality has not been shown, and his sentence is not cruel or unusual within the meaning of the United States and California Constitutions.[81]

The question to be decided by a federal court on a petition for habeas corpus is not whether the state sentencer committed state-law error in relying upon an adequately narrowed aggravating factor.  Rather, the federal constitutional question is whether such reliance is so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation.[82]

[T]he Supreme Court has noted that proportionality analysis under the Eighth Amendment should be guided by objective criteria, including: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  *Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).  Despite this, the Supreme Court has not uniformly applied this three step analysis.  *See, e.g., Harmelin v. Michigan,* 501 U.S. 957, 1005,

---

[81] *People v. Coles*, No. C055309, 2008 WL 1777810, at *6-8 (Cal. Ct. App. Apr. 21, 2008).  Omitted material relates to Coles's appeal.

[82] *Richmond v. Lewis*, 506 U.S. 40, 50 (1991).

111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *Rummel v. Estelle,* 445 U.S. 263, 285, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

In an attempt to resolve this inconsistency, the Supreme Court has explicitly identified that which constitutes "clearly established federal law" in its Eighth Amendment jurisprudence for the purpose of habeas review. Specifically, in *Lockyer v. Andrade,* 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), after conceding that its "precedents in this area have not been a model of clarity," the Court held that "one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Lockyer,* 538 U.S. at 72, 123 S.Ct. 1166. In so holding, the Court made no mention of any constitutional imperative requiring that courts make the various intra- and inter-jurisdictional comparisons recommended by the *Solem* court. *See id.* Instead, the Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73, 123 S.Ct. 1166.[83]

Although, as Cathey points out, there is no evidence of violence or threat of violence, California has categorically defined first degree residential burglary as a dangerous crime, and his accomplice was armed. It is beyond dispute that this created a significant risk of causing serious bodily injury or death to a third person. Also, Cathey's criminal history establishes that he is a career criminal, a recidivist whose prior incarcerations, coupled with the fact he committed the current offense while on parole, clearly shows that Cathey is "incapable of conforming to the norms of society as established by its criminal law," a legitimate penological goal this Court must take into consideration.[84]

This Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

---

[83] *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 438-39 (9th Cir. 2007).

[84] *See Ewing v. California*, 538 U.S. 11, 29-30 (2003) (plurality) (quoting *Rummel v. Estelle*, 445 U.S. 263, 276 (1980)).

the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[85]   Nor, viewing the matter through the lens of the *Nunes* analysis of Supreme Court precedent, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Cathey's case within the scope of *Andrade-Williams-Landrigan-Richter*, i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.   Cathey is not entitled to relief under Ground 2(a).

Ground 2(b):  *Romero* Hearing

Cathey argues that the trial court did not hold a proper *Romero* hearing on the question of striking his prior convictions.   According to Cathey, had the trial court held a proper *Romero* hearing, it would have established that the number and nature of his prior convictions were such that it was improper to impose the enhancement under California's "three-strikes" law.   The Court of Appeal rejected Cathey's position, holding:

> In determining whether to strike prior serious felony convictions, the trial court "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)
> We review for abuse of discretion the trial court's failure to dismiss or strike a prior serious felony. (*People v. Carmony, supra,* 33 Cal.4th at p. 376.)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id.* at p. 377.)
> For the same reasons that Coles and Cathey cannot show that their sentences were disproportionate to their offenses, they fail to establish they are outside of the

---

[85] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

"spirit" of the Three Strikes law.  The trial court's decision was not irrational or arbitrary.[86]

Under *Romero*, "a court may exercise the power to dismiss . . . subject, however, to strict compliance with the provisions of [Penal Code] section 1385 and to review for abuse of discretion."[87]  As the California Court of Appeal held, under California law, a decision to not strike a prior conviction is within the discretion of the trial judge, subject only to review for an abuse of that discretion.  Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,[88] the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[89]  Whatever rights Cathey has to have a prior conviction for the purposes of California's "three-strikes" law stricken is a question of state law beyond the purview of this Court in a federal habeas proceeding.[90]  Because he has failed to raise an issue of constitutional dimension, Cathey is not entitled to relief under Ground 2(b).

---

[86] *People v. Coles*, No. C055309, 2008 WL 1777810, at *8 (Cal. Ct. App. Apr. 21, 2008).

[87] *Romero*, 917 P.2d 628, 630 (Cal. 1996).

[88] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[89] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing § 2254(d)(1))).

[90] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business.").

Ground 3(a):  Unidentified "Phantom" Witness

This issue was raised before the California Court of Appeal by Coles, not Cathey.   In

rejecting Coles's argument, the Court of Appeal held:

> Coles contends he was denied his rights to confrontation, due process, and a fair trial when, over his objection, the trial court allowed Deputy Sotelo to testify that a witness said he saw a Black man running on a nearby street.  We agree the testimony should not have been allowed, but conclude the error was harmless.

> Specifically, Sotelo testified that while he and Deputy Cress were detaining Cathey outside of Schemel's residence, a person drove up and contacted them.  When Sotelo began to testify to the person's statements, defense counsel objected on the grounds of hearsay, relevance, and Evidence Code section 352, which states:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

> The People argued the anticipated testimony was not hearsay since it was being offered "to indicate the conduct that happened next," namely, why Deputy Canfield drove off in search of the Black man.

> Without stating any basis for its determination, the court overruled the objection.  Sotelo then testified the person said he saw a Black man running on the street north of the deputies.

> Coles contends the court's ruling was error because even if the person's statement was not hearsay, it was not relevant to any issue in the case.

> The statement was not hearsay because it was not offered for the truth of the matter asserted (that a Black man was seen running a block north of Schemel's residence); instead, it was offered for the purpose of showing why Deputy Canfield was searching for the suspect.  (See *People v. Scalzi* (1981) 126 Cal.App.3d 901, 907 [where declarant's statement imparting information is not offered for truth of the information but to show the hearer's subsequent actions were in conformity with the information, the declarant's statement is not hearsay].)

> However, to be admissible the statement had to be relevant to an issue in the case.  (Evid.Code, § 350 ["No evidence is admissible except relevant evidence"]; Evid.Code, § 210 ["'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].)

> The reason why Deputy Canfield went in search of the suspect was neither disputed nor necessary to a determination of any issue in the case.  Thus, the person's statement was not relevant and should not have been allowed in evidence.  Nevertheless, it was harmless because the same evidence was introduced by Canfield's undisputed testimony that, while searching the area for a suspect described

25

as a Black man wearing a light-colored shirt, he saw Coles (a Black male wearing a ligh-colored shirt) round a corner, look at Canfield, and start running. Canfield then described the stop of and the struggle with Coles, and Canfield's observance of the butterfly knife and the firearm.

Because Canfield's legally admissible testimony covered the same information as that given by the witness who contacted Sotelo at the scene, defendant was not prejudiced by Sotelo's testimony about the witness's statement. Thus, reversal is not required.[91]

Cathey's "confrontation" claim fails because the statement he challenges, that of the bystander who reported to the officer that he saw a black man running from the scene, was non-testimonial. The right to confrontation only extends to testimonial statements, or put differently, the Confrontation Clause simply has no application to non-testimonial statements.[92]

Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.[93]

The statement at issue in this case was clearly not "the functional equivalent" of in-court testimony, "formalized testimonial materials," or intended "for use at a later trial."[94] It is therefore not testimonial. Because it was not offered for the truth of the matter asserted, it did not constitute inadmissible hearsay.

---

[91] *People v. Coles*, No. C055309, 2008 WL 1777810, at *2-3 (Cal. Ct. App. Apr. 21, 2008).

[92] *United States v. Marguet-Pillado*, 560 F.3d 1078, 1085-86 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 755-56 (9th Cir. 2009).

[93] *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004).

[94] *Id.*

Again treating Cathey's allegations liberally and construing his argument as adopting the Court of Appeal's finding that it was erroneously admitted, Cathey has no more than Coles shown that it was not harmless error.  Despite his lengthy dissertation on the issue, Cathey does not explain how he was possibly prejudiced by this testimony, which tied Coles to the crime. The police already knew who Cathey was and his proximity to the scene of the crime.  Other than the fact that it was Coles, not Cathey, who was armed, a factor that entered into the Court of Appeal's determination upholding the imposition of the enhanced sentence under California's "three-strikes" law, how testimony that led to the arrest of Coles, even if erroneously admitted, could possibly be prejudicial to Cathey is as inexplicable as it is unexplained.  Cathey is not entitled to relief under ground 3(a).

Ground 3(b):  Cathey's Out-of-Court Statements

At the time that Cathey was initially stopped the apprehending officer inquired as to the reason that Cathey was in the neighborhood, to which Cathey responded that he was looking for a female named Tiffany for whom he was to do some lawn work but didn't know her address. Cathey contends that to allow into evidence his response violated his Sixth Amendment confrontation right or was somehow inadmissible hearsay.  Cathey also raised this ground in his habeas petition to the California Supreme Court.  Respondent has not addressed this question in his response.

Although Cathey has raised this issue on Sixth Amendment grounds, his factual allegation is that the statement was made while he was being detained and before he was warned of his right to remain silent.  Thus, Cathey's claim falls within the Fifth Amendment and

*Miranda*,[95] not the Sixth Amendment under either *Crawford* or *Roberts*.[96]   Again liberally construing Cathey's pleading, this Court will address this claim as though it was brought under *Miranda*.

Under *Miranda*, inculpatory statements made by a defendant during an interrogation while in police custody are inadmissible unless the defendant has been informed of his rights to remain silent and to the assistance of counsel and, after having been given the *Miranda* warning, validly waives those rights.[97]   The privilege against self-incrimination while an individual is in custody embodied in *Miranda* is not whether he is allowed to talk with the police without the benefit of warnings and counsel, but whether he can be interrogated.[98]   "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."[99]

If a police officer has a reasonable suspicion that a crime has been committed, he or she may make a brief investigatory stop.[100]

> An officer making an investigatory stop will often have some suspicion of the identity of the person apprehended and of his prior unobserved activity.  It is the very purpose of the investigatory stop to allow the officer to confirm or deny these

---

[95] *Miranda v Arizona*, 384 U.S. 436 (1966).  A short-hand reference to the failure to adequately inform a defendant of his or her rights to remain silent and the assistance of counsel.

[96] *Ohio v. Roberts*, 448 U.S. 56 (1980).

[97] *North Carolina v. Butler*, 441 U.S. 369, 372-73 (1979) (citing *Miranda*, 384 U.S. at 475).

[98] *See Rhode Island v. Innis*, 446 U.S. 291, 299-302 (1980).

[99] *Miranda*, 384 U.S. at 478.

[100] *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

suspicions by reasonable questioning, rather than forcing in each instance the 'all or nothing' choice between arrest and inaction.[101]

"Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving of [sic] *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."[102]

> There is no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest.  Rather, whether a police detention is an arrest or an investigatory stop is a fact-specific inquiry, guided by the general Fourth Amendment requirement of reasonableness.  This inquiry requires us to consider all the circumstances surrounding the encounter between the individual and the police  by evaluating not only how intrusive the stop was, but also whether the methods used [by police] were reasonable *given the specific circumstances*."[103]

At this time, beyond requesting that a person identify himself or herself, the Supreme Court has not identified the precise outer parameter of a permissible inquiry during an investigatory stop.  In this case, the officer's initial inquiry went solely to Cathey's identity and his reason for being in the area.  Neither of these questions went beyond those that are normally permissible during an investigatory stop.[104]

---

[101] *United States v. Hickman*, 523 F.3d 323, 327 (9th Cir. 1975); *see Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cnty.*, 542 U.S. 177, 185 (2004) ("[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." (citations omitted)).

[102] *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (citing *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977)).

[103] *Gallegos v. City of  Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002) (alteration in original) (internal quotation marks and citations omitted).

[104] *United States v. Davis*, 530 F.3d 1069, 1081-82 (9th Cir. 2008).

Accordingly, based upon the record before it, this Court cannot find that the assumed decision of the California Supreme Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[105]  Specifically, this Court cannot find that the state court's assumed decision was objectively unreasonable as required by *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.  Cathey is not entitled to relief under ground 3(b).

---

[105] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

## V.  CONCLUSION AND ORDER

Cathey is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[106]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[107]

The Clerk of the Court is to enter judgment accordingly.

Dated: February 6, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[106] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[107] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

31